SILAS ARMSTRONG AND ALBERT A. GRAVES V. HENRY A.
COOK.

| 95 | 257 |
|---|---|
| 117 | 261 |
| 95 | 257 |
| 125 | 543 |

*Attachment—Sufficiency of grounds for suing out writ—Dissolution—Chattel mortgage—Validity.*

1. A debtor has a right to mortgage all of his property to secure past *bona fide* indebtedness and future advances.

2. A statement in a chattel mortgage that it shall be a continuing security until discharged by writing, and, at the option of the mortgagee, shall be as binding in all respects upon the assigns of the mortgagor's business as if made by them in person, only states the legal effect of the mortgage, and is not a badge of fraud.

3. The power to sell at public or private sale, and to remove the mortgaged property to other places for sale in case of default, is not unusual in chattel mortgages, and such provisions are not fraudulent *per se*.

4. An allegation in an affidavit for attachment, that the affiant has good reason to believe that the debtor is about to assign and dispose of his property with intent to defraud his creditors, is not supported by proof that the debtor had given a mortgage to his wife to secure her for money loaned him, and which had gone into the original purchase of his stock of goods, and that he had taken his ledger to the city where his principal creditors resided for the purpose of showing them his financial condition, and that upon his return, and after the attachment had been issued, he mortgaged his stock of goods to secure his indebtedness to them, and to cover advances which they agreed to make to enable him to continue in business.

*Certiorari* to Sanilac, to review an order reversing the action of a circuit court commissioner dissolving an attachment. (Beach, J.) Submitted on briefs March 9, 1893. Order reversed, and attachment proceedings quashed, April 7, 1893. The facts are stated in the opinion.

*Dickinson, Thurber & Stevenson*, for defendant, and petitioner in *certiorari*, contended:

1. Cook had a right to pay, prefer, and secure certain creditors to the extent of his actual indebtedness to them, and in so doing he did not make an assignment for the benefit of creditors generally; citing *Root v. Potter,* 59 Mich. 506; *Burnham v. Haskins,* 79 Id. 35; *Sheldon v. Mann,* 85 Id. 265; *Bresson v. Musselman,* 86 Id. 186; *Warner v. Littlefield,* 89 Id. 329; *Bank v. Lumber Co.,* 90 Id. 345.

*J. B. Houck,* for defendant, and petitioner in *certiorari,* contended:

1. The appellate court will review the decision of the circuit judge on the testimony when there is an entire absence of proof on some material fact; citing *Cicotte v. Morse,* 8 Mich. 424; *Jackson v. People,* 9 Id. 111; *Berry v. Lowe,* 10 Id. 9; *Linn v. Roberts,* 15 Id. 443; *Bank v. Barge Co.,* 52 Id. 167.

2. It is not a circumstance of fraud that a debtor assigns, disposes of, or mortgages his property, for he may lawfully convey or mortgage it in payment of or as security to one creditor rather than another, and in such order as he may prefer; citing *Sweetzer v. Mead,* 5 Mich. 110; *People v. Bristol,* 35 Id. 34; *Hill v. Bowman,* Id. 191; *Ferris v. McQueen,* 94 Id. 367; and he may convey his property to his wife in payment of an antecedent debt, in preference to other creditors; citing *Loomis v. Smith,* 37 Mich. 595; *Allen v. Antisdale,* 38 Id. 229.

*Avery Bros. & Walsh (Farley & Aitkin,* of counsel), for plaintiffs, and respondents in *certiorari,* contended:

1. Rulings in regard to admitting evidence are not reviewable on *certiorari* in this class of cases; citing *Schall v. Bly,* 43 Mich. 403; *Carver v. Chapell,* 70 Id. 49; nor will the Court review findings of fact by the commissioner or judge; citing *Hyde v. Nelson,* 11 Mich. 353; *Linn v. Roberts,* 15 Id. 443; *McGraw v. Schwab,* 23 Id. 13; *Brown v. Blanchard,* 39 Id. 790; *Bank v. Whittle,* 41 Id. 365; *Sheldon v. Stewart,* 43 Id. 574.

2. We recognize fully the right of a debtor, even in failing circumstances, to give, and his creditors to receive, security upon any or all of the debtor's property for an actual existing indebtedness, and, if the purpose of the debtor be alone to give the security, a charge of fraud cannot be predicated on that fact to sustain an attachment. But the debtor must look to it, if in failing circumstances, that his security goes no further than indemnity for actual indebtedness,—there must be no fictitious security, no excessive security, and no extraordinary

powers given the mortgagee, the execution of which would necessarily impair the value of the equity of redemption; citing *Warner v. Littlefield*, 89 Mich. 340.

GRANT, J. The defendant was a country merchant doing business in the village of Croswell, in Sanilac county. Plaintiffs were merchants in Port Huron, and had sold goods to the defendant to the amount of $243, only $77 of which was due at the time this suit was instituted. November 12, 1890, plaintiffs sued out a writ of attachment, and caused it to be levied upon defendant's entire stock, which was then worth about $4,000. They gave a bond in attachment for only $200. Defendant moved before a circuit court commissioner for a dissolution of the attachment, which was granted. Plaintiffs appealed from the decision of the commissioner to the circuit court, which reversed the action of the commissioner, and held that there was sufficient ground for issuing the attachment. Plaintiff Graves made the affidavit for the attachment, in which the sole ground alleged to justify the issuance of the writ was that he had good reason to believe that defendant was about to assign and dispose of his property with intent to defraud his creditors.

Graves went to Croswell November 11, to see Mr. Cook. Mr. Cook was embarrassed, and had not then the money with which to pay his indebtedness. He had gone to Detroit to see his creditors there with a view to arrange an extension of time. His principal creditors were in Detroit. Mr. Cook had a clerk and a boy in the store. The clerk was then sick, and, when Mr. Cook went to Detroit the night before, he requested Mr. Houck, who kept his books, to look after the business in his absence. Mr. Graves testified that the sole reason he had for believing that Cook was about to dispose of his property with intent to defraud his creditors was that he learned that Cook had given a mortgage to his wife on

September 19 previous for $1,540; that $900 or $1,000 in drafts had been returned; that he had taken his ledger and gone to Detroit to fix the matter up. While in Detroit, Cook arranged with his creditors there to execute a mortgage to one Elliott, to secure the indebtedness due them, and to cover future advances. He returned from Detroit on the evening of the 12th, and on the next day executed this mortgage.

The sole question is whether there was any evidence to sustain the attachment proceeding, and to support the allegation in the affidavit upon which the writ was issued. We think the evidence shows no intent on the part of Cook to defraud his creditors. The mortgage to his wife was given for a valuable consideration, to secure her for money which she had loaned her husband, and which had gone into the original purchase of his stock of goods. At the request of his creditors he tried to induce her, though she was then sick and upon her death-bed, to release her mortgage, which she declined to do. He had very naturally and properly taken his ledger to Detroit, in order to show his creditors there his financial condition. The indebtedness to the Detroit creditors, secured by the mortgage to them, was *bona fide,* and they were willing to extend the time, to furnish him more goods, and to permit him to pay some of his small debts before paying them.

None of the provisions of this mortgage were *per se* fraudulent, as claimed by plaintiffs' counsel. Mr. Cook had a right to mortgage all his property to secure a past *bona fide* indebtedness and future advances. The statement in the mortgage that it should "be a continuing security until discharged by writing, and, at the option of the party of the second part, should be as binding in all respects upon the assigns of said business of the first party, or any of them, as if made by them or him in person," is no badge of fraud. This clause only states the legal effect of

the mortgage.    Without it the security would have continued until discharged, and would have bound the assigns of the mortgagor.    The power to sell at public or private sale, and the power to remove the goods to other places for sale in case of default, are not unusual provisions in chattel mortgages.    It was undoubtedly understood and contemplated that the stock might be sold to better advantage in some other place than in the small village of Croswell.

Judgment reversed, and the attachment proceedings quashed.

The other Justices concurred.