## WEBBER v. HAYES.

1. GARNISHMENT — FRAUDULENT CONVEYANCES—EQUITY JURISDICTION—CONSTITUTIONAL LAW.

    3 How. Stat. § 8059, permitting garnishment for lands held by conveyance void as to creditors of the principal defendant, is not unconstitutional as conferring upon a court of law a power which belongs to equity to determine as to the validity of such conveyances.

2. COMMON-LAW ASSIGNMENT—WHAT CONSTITUTES.

    The provision of 2 How. Stat. § 8739, invalidating common-law assignments which create preferences between creditors, or omit some of the debtor's property not exempt from execution, does not apply to a transaction where a large number of instruments of different kinds, running to different persons, and executed at different times, and which do not cover all of the debtor's property, are given to secure his debts.

3. SAME.

    Not every attempt to dispose of property fraudulently will be construed to be a common-law assignment, void under the statute. Before there is opportunity for application of the statute, there must be some instrument in the nature of a common-law assignment, the terms of which, but for the statute, would vest the debtor's title in another in trust for one or more creditors, whereby other creditors would be precluded from any remedy against the title or equity of the debtor.

4. EVIDENCE—LETTERS—HEARSAY.

    A letter, written by a son of the parties to an alleged fraudulent conveyance, which is not so connected with the transaction as to be a part of the res gestæ, is hearsay and inadmissible.

5. TRIAL—CONDUCT OF COUNSEL—RELATIONS WITH JURY.

    The practice of card-playing in the jury-room between counsel and members of the jury is open to criticism.

6. APPEAL—BRIEFS OF COUNSEL—CITATION OF DECISIONS.

    While the citation in briefs of counsel of foreign publications of Michigan decisions is not objectionable, the citation in the State Reports must, whenever practicable, be given also.

Error to Ionia; Davis, J.    Submitted April 7, 1898.
Decided June 7, 1898.

Garnishment proceedings by George W. Webber and Andrew J. Webber against Mary A. Hayes, as garnishee of Nathan B. Hayes.    From a judgment for plaintiffs, the garnishee defendant brings error.    Reversed.

*Lemuel & William K. Clute* (*F. C. Miller* and *A. B. Morse*, of counsel), for appellant.

*McGarry & Nichols* (*V. H. Smith* and *A. A. Ellis*, of counsel), for appellees.

HOOKER, J.    The plaintiffs commenced proceedings in garnishment against the wife of their judgment debtor; and, after disclosure and answer to special interrogatories were filed, the cause came to trial before a jury upon the statutory issue, and a verdict was rendered for the plaintiffs, from which the garnishee defendant has appealed.

In support of the plaintiffs' claim, it is urged that there was evidence tending to show that the principal defendant disposed of his property, by deed, assignment, and mortgage, to his wife (the garnishee defendant) and other persons, for the purpose of defrauding his creditors.    It was contended upon the trial, by plaintiffs' counsel:

"1. That these instruments, taken collectively, amounted to a 'constructive assignment;' that it was intended that they should amount to an assignment with preference to certain creditors; that there was a resulting benefit to Mr. Hayes from the entire transaction; and that certain creditors were left out.

"2. That the papers transferring the personal property to the wife amounted to a mortgage, and that they were fraudulent as a mortgage, because not filed before the proceedings in this case were instituted.

"3. That, if it was a bill of sale, it was presumed fraudulent, because no such possession as the law requires was given and sustained by Mrs. Hayes after it was claimed by her that she took the property into her possession.

"4. That the general purpose of giving the papers to

117 MICH.—17.

Mrs. Hayes was to defraud creditors, and that she participated in the fraud, and that, although she might have been a creditor in good faith, Mr. Hayes could not prefer her, by acts of fraud in which she participated, to the exclusion, detriment, delay, and hindrance of other creditors."

Among the more important questions raised by the defendant are the following:

1. That there was no evidence tending to connect Mrs. Hayes with any attempt upon the part of her husband to hinder, delay, or defraud his creditors.

2. That, if there was, the statute which permits the validity of conveyances of property (especially real property) to be questioned, and tried by jury, and to form the basis of a garnishee's liability, is unconstitutional and void.

3. That the undisputed evidence negatives the theory of a constructive assignment for the benefit of creditors, and the question should not have been left to the jury.

At the threshold of the case lies the question raised upon the garnishment statute (2 How. Stat. § 8059, as amended in 3 How. Stat. § 8059). It provides that —

"From the time of the service of the writ, the garnishee shall be liable to the plaintiff to the amount of property * * * under his control belonging to the principal defendant, * * * and for all property, personal and real, * * * of the principal defendant, which such garnishee defendant holds by conveyance, transfer, or title that is void as to creditors of the principal defendant, and for the value of all property, personal and real, * * * of the principal defendant, which such garnishee defendant received or held by a conveyance, transfer, or title that was void as to creditors of the principal defendant."

The conveyances to Mrs. Hayes of some of this property, both real and personal, were absolute in form. We understand it to be contended that conveyances of this character, especially of real estate, cannot be overturned in garnishment proceedings. As to real estate, this may be the general rule, where the statute does not provide that it may be done. Rood, Garnish. § 177; 2 Shinn,

Attachm. § 468, and note. The rule seems to be different as to personal property. 2 Shinn, Attachm. §§ 587, 588. We have, therefore, no hesitancy in holding that our statute is valid, so far as it relates to personal property.

The statute was before the court in the case of *Fearey* v. *Cummings*, 41 Mich. 383. At that time the statute was not as broad as it is now, and the court held that, where the garnishee had parted with the possession of the property before being served with process, he could not be held liable; but there is no hint that the act was invalid, and the opinion distinctly states that the fraudulent character of the transaction was a question for the jury. That was a proceeding involving personal property; but we are aware of no impediment to the application of the same practice to real estate, where authorized by the legislature. As said in the case last cited, garnishment is a proceeding against the property, and therefore the *bona fides* of the transaction is open to question. Kansas has a similar statute, and, while it has been before the courts of that State, its validity seems not to have been questioned. *Boston Loan & Trust Co.* v. *Organ,* 53 Kan. 386. Apparently few States have applied this remedy to real estate, and we are cited to no case which holds such legislation unconstitutional. The ground upon which counsel place the proposition is that the setting aside of a conveyance of real estate, for fraud, has always been confined to courts of equity. But, whatever we may think of its expediency, we know of no obstacle to the exercise of a similar jurisdiction by courts of law, if the legislature authorizes it in furtherance of a legal remedy theretofore existing, or created at the time the jurisdiction is conferred. It is not a case where equity is deprived of jurisdiction, or where the nature of a court of chancery is sought to be changed, as in the case of *Brown* v. *Kalamazoo Circuit Judge,* 75 Mich. 274 (5 L. R. A. 226, 13 Am. St. Rep. 438). Nor is it, in our opinion, a departure so radical as to deprive a party of a constitutional right to an equitable remedy. The case of *Meigs* v. *Weller,*

90 Mich. 629, involved real estate; and, while the constitutional question was not raised, the finding of fraud in the conveyance was sustained by this court.

It is obvious that an important question was whether this transfer of property to the wife was void because made with the intent to hinder, delay, or defraud creditors. Involved in it were questions relating to the consideration, the motive and intent of Hayes, and Mrs. Hayes' knowledge of such motive and intent, and design to aid her husband. These were questions of fact, and there was evidence in the case which required their submission to the jury. But counsel seem to have contended that if the jury should find that the claim of Mrs. Hayes was valid, and that she was not a participant in an attempt by her husband to hinder, delay, or defraud his creditors, the property conveyed to her might still be reached, although conveyed to her in payment of debts, or mortgaged to secure valid claims, both of which may be done, as we have repeatedly held. We say, "seem to have contended," because, unless they did so contend, there was nothing to be gained by the presentation of the constructive assignment theory, inasmuch as the conveyances, if otherwise fraudulent, would have been set aside upon the ground of common fraud, regardless of the nature of such fraud, or the means by which it was perpetrated. To do this (*i. e.*, to reach the property, though no actual fraud were shown), it was only necessary that the instrument be attacked; for, while the wife might be paid or secured by deeds and mortgages, an attempt to provide for her by an instrument known in the law as a "common-law assignment for the benefit of creditors" would fail, unless such instrument should conform to the statute regulating such instruments.

It was first necessary to build up a common-law assignment, and then proceed to demolish it by the application of the statute; and this has been attempted, as in the case of *Austin* v. *First National Bank*, 100 Mich. 613. This statute does not purport to provide a remedy against

all sorts of fraudulent conveyances, but does attempt to regulate common-law assignments, which had previously well-settled characteristics. By referring to the statute (2 How. Stat. § 8739), we shall find that it invalidates such assignments where they create preferences between creditors, or where some of the debtor's property not exempt from execution is omitted from the instrument. In the present case there is no instrument which bears the semblance of a common-law assignment for the benefit of creditors, but a large number of instruments, of different kinds, running to different persons, executed at different times, in addition to which it appears that not all of the property was covered by instruments made before the suit was begun, and that some property was omitted from all of the instruments. The decisions upon this statute are numerous, and they clearly show that, before there is an opportunity for its application, it must appear that there is something in the nature of a common-law assignment to be attacked; some instrument the terms of which, but for the statute, would vest the debtor's title in another in trust for one or more creditors, whereby other creditors would be precluded from any remedy against the title or equity of the debtor. In short, attempts to provide for a portion of one's creditors by assignment to a trustee, or when confined to a portion of the debtor's property, are forbidden; but it does not follow that every attempt to dispose of property fraudulently will be construed to be a void common-law assignment for the benefit of creditors. *Sheldon* v. *Mann*, 85 Mich. 265; *Warner* v. *Littlefield*, 89 Mich. 329; *Armstrong* v. *Cook*, 95 Mich. 257; *National Bank of Oshkosh* v. *First National Bank*, 100 Mich. 485; *Austin* v. *First National Bank*, Id. 620. There was, therefore, no occasion to submit this subject to the jury.

A letter from George Hayes, the son of Mr. and Mrs. Hayes, written to a friend, was admitted, upon the theory that he was a co-conspirator with his parents. It was not introduced by way of impeachment, nor was it a letter so

connected with the transaction as to be a part of the *res gestæ*. It was hearsay, and no more admissible than the statements of an agent made after or during the pendency of a transaction, but not in connection with or furtherance of it.

The court very properly criticised the practice of card-playing in the jury-room between counsel and members of the jury; but, as the case must be reversed on other grounds, we need not discuss the subject.

As the cause went to the jury upon an erroneous theory, we are constrained to reverse it. The record contains many assignments of error that we do not pass upon, as we are of the opinion that the trial of the actual merits of the case should be attended with little difficulty or danger of error.

We notice a growing practice of citing Michigan cases in foreign publications. There is no objection to this, but we must insist upon the citation, also, of our own edition of the Reports, where cases have been reported.

The judgment is reversed, and a new trial ordered.

The other Justices concurred.