COUPER v. METROPOLITAN LIFE INSURANCE CO.

1. MONEY RECEIVED—MISTAKE—PAYMENT.
    A payment, although voluntarily made, if made under mistake of material fact, may be recovered, even if the mistake be due to lack of investigation.

2. WAIVER—ESTOPPEL—INTENT.
    A waiver is the intentional relinquishment of a known right, and implies election to forego some known advantage which might have been insisted upon, thus inducing belief of intention and purpose to waive.

3. INSURANCE—MISTAKE—WAIVER—INTENT.
    Payment by insurance company to insured, by mistake, of about $200 more than would have been due insured even if insurer intended to waive its right to limit payment to six months prior to proof of disability, held, to negative any intention on part of insurer to waive said right.

Error to Washtenaw; Sample (George W.), J. Submitted April 8, 1930. (Docket No. 23, Calendar No. 34,696.) Decided June 2, 1930.

Assumpsit by Edward M. Couper against Metropolitan Life Insurance Company, a foreign corporation, on a life insurance policy. From a verdict and judgment for plaintiff, defendant brings error. Reversed.

*Frank B. DeVine,* for plaintiff.

*Campbell, Bulkley & Ledyard (William B. Cudlip,* of counsel), for defendant.

SHARPE, J. On January 22, 1924, the defendant insured the life of plaintiff in the sum of $5,000. Attached to the policy was a supplementary contract providing for the payment of $50 per month in case of the total and permanent disability of the insured, payable, however, for not more than six months prior to the date of required proof of disability.

Plaintiff, a student at the University of Michigan, left on December 15, 1925, and went to North Carolina for his health. He was then ill. While there, he talked with a man whom he met, who had a similar policy, and wrote his father about it. The father took the matter up with Forest B. Pettibone, defendant's agent at Ann Arbor, and proof of plaintiff's disability was furnished the defendant on February 2, 1927. Defendant's liability for benefits at that time was limited to six months prior thereto. It, however, paid for one month in advance of the six, and plaintiff was thus entitled to $350.

It clearly appears, and does not seem to be disputed, that, by reason of an error committed by

one of defendant's employees, the amount of liability was fixed as extending from June 8, 1925, instead of August 2, 1926, and a check was made on February 8, 1927, and sent from its home office in New York to defendant's manager at Jackson, Michigan, for $1,050, and delivered to and cashed by plaintiff. On March 8, 1927, another payment of $50 was made to plaintiff. On March 29, 1927, defendant discovered the mistake which had been made, and wrote plaintiff a full explanation of it and requested that it be reimbursed in the amount of $700. This was not done. The defendant then made no further payments for 14 months. It continued them in June, 1928, and afterwards until advised by plaintiff of his recovery on August 29th of that year.

On January 11, 1929, plaintiff brought this action to recover the $700. He had verdict and judgment therefor. Defendant brings error.

Conceding the overpayment on the proofs submitted, the plaintiff contends "that by the payment of February 8, 1927, the defendant waived that provision of the insurance contract relative to the limitation of liability to six months preceding date of notice of disability." If there was no such waiver, as a matter of law the defendant was entitled to a directed verdict as requested.

The check for $1,050 was sent by the manager at Jackson to Mr. Pettibone and delivered by him to plaintiff's father. The father testified that, when he first talked with Pettibone about making claim, the illness of the plaintiff prior to the six months' limitation was spoken of, and that Pettibone said, "That clause on there is to protect them against fraud," and that, "He said at the time I got the blanks it was a clear case and in ten days he would be down with a check for $1,050." Mr. Pettibone

did not recall the conversation last stated, but it is apparent that no such statement could have been made. As before stated, the $1,050 payment covered disability from June 8, 1925. In the proof submitted by plaintiff, verified on January 24, 1927, he stated in answer to the question: "Give the date of injury or beginning of illness causing present condition," "Nov. 20, 1925," and in answer to another question as to the date he quit work he said, "Dec. 16, 1925," and that the reason therefor was his "Present illness." Surely, Mr. Pettibone could not have assured the father that the company would be likely to pay disability before the date of his illness, November 20, 1925, and yet the $1,050 included disability from June 8th of that year.

The father further testified that at the time Pettibone delivered the check to him he said, " 'That is more than I expected, but' he says, 'well, it is made out to you and it is yours. All you have got to do is indorse it and get the money. They are more liberal than I thought they would be.' " He further testified that, when he received the letter from the defendant requesting reimbursement of the $700, he took it to Mr. Pettibone, who read it, and said, "You let me take that letter. It is all wrong."

"Mr. Pettibone took the letter and kept it, I should judge, somewhere about a year before he returned it to me. The matter was turned entirely over to him and he was going to correspond with the company, and his statement to me at the time he took the letter was that he thought that the claim was all wrong. That he would take it up with them."

On cross-examination he said that Pettibone—

"told me that the company wouldn't insist on the provision when there was a clear proof of disability.

and that the company was too big in this kind of a case not to pay."

Mr. Pettibone's testimony, so far as it may tend to support the claim of waiver, was as follows:

"Previous to the delivery of the $1,050 check by me to Mr. Couper, all other proof in this case had gone through my hands showing when the disability commenced and the whole thing, and when I delivered the check I had full knowledge that the claim papers had got to their destination, and full knowledge of the things that were contained in them.

"*Q.* And you delivered the check with that understanding?

"*A.* (No answer.)

"*Q.* Just answer?

"*A.* Yes, sir."

It is well settled law that a payment, although voluntarily made, if made under a mistake of a material fact, may be recovered, even if the mistake be due to a lack of investigation. *Lane* v. *Pere Marquette Boom Co.,* 62 Mich. 63; *Pingree* v. *Mutual Gas Co.,* 107 Mich. 156; *Truax* v. *Bliss,* 139 Mich. 153.

But plaintiff insists that the acts and conduct of the defendant, through its agent, Mr. Pettibone, constituted in law a waiver of the provision in the policy limiting plaintiff's right to payment for disability to six months prior to the date of the receipt of the required proof thereof.

"A waiver is the intentional relinquishment of a known right." 27 R. C. L. p. 904.

It implies an election to forego some known advantage which might have been insisted upon (*Warren* v. *Crane,* 50 Mich. 300), which induced a belief

of an "intention and purpose to waive." *Bailey* v. *Jones,* 243 Mich. 159.

If we assume that what was said and done by Pettibone was the word and act of the defendant, which defendant disputes and which we do not find it necessary to decide, the undisputed facts clearly negative any intention to waive. The $1,050 check included payments to plaintiff for disability from June 8, 1925, to November 20th of that year, the latter being the date when plaintiff became disabled, as stated by him in his verified proof. It thus included about $200 which plaintiff was not entitled to, even if the defendant was willing to waive the six months' provision and pay him from the date when his disability arose. Clearly, Mr. Pettibone did not understand that the defendant was making the plaintiff a present of this amount. This fact of itself so clearly negatives any intent on his part or that of his company to waive the right to limit the payment to the six months' period that further discussion seems unnecessary.

The judgment is reversed and set aside, with costs, and the cause remanded with directions to enter a judgment for the defendant.

WIEST, C. J., and BUTZEL, CLARK, McDONALD, POTTER, NORTH, and FEAD, JJ., concurred.